UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

           Plaintiff,

vs.                                MEMORANDUM AND ORDER
                                     Criminal No. 24-00317 (MJD/JFD)

Wayne Robert Lund,

           Defendant.

_____

Benjamin Bejar, Assistant United States Attorney, Counsel for Plaintiff.
Daniel L. Gerdts, Lawyer, Counsel for Defendant.

_____

      This matter is before the Court on the Report and Recommendation by United States Magistrate Judge John F. Docherty dated May 22, 2025. (Doc. 38.) Magistrate Judge Docherty recommends the Court deny Defendant's Motion to Suppress Search and Seizure Evidence. (Doc. 27.) Defendant filed objections to the Report and Recommendation. (Doc. 41.) The Government filed a response to Defendant's objections. (Doc. 42.)

      Pursuant to statute, the Court has conducted a de novo review of the record. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b). Based upon that review, and in consideration of the applicable law, the Court will adopt the Report and Recommendation.

1

I.   **FACTS**

For a full recitation of the facts, the Court refers to the Report and Recommendation ("R&R"). (Doc. 38 at 3-6.) Briefly, Defendant's motion to suppress is premised on law enforcement's seizure of explosive devices from his vehicle after a traffic stop. Defendant challenges the search of his vehicle and the seizure of items found therein. The following facts are taken from the R&R.

At about 2:00 a.m. on November 2, 2024, Officer Dominic Shelley of the Oak Park Heights Police Department ("the department" or "OPHPD") was doing routine traffic patrol on Highway 36, which included running random license plates, when he legally stopped Defendant for driver's license and vehicle registration violations. Officer Shelley was scheduled to testify at the suppression hearing but was in an automobile accident a few days before the hearing and was unable to be in court. (Id. at 3 n.1.) Without objection from Defendant, Investigator David Wynia of the OPHPD testified "as to Officer Shelley's observations and actions." (Id.)

After stopping his vehicle, Defendant was unable to produce his driver's license or proof of auto insurance. Officer Shelley returned to his squad car to

2

run data base checks on Defendant. While there, he called his supervisor, Sgt. Vierling, to discuss how best to proceed. He also contacted Officer Ryan Jones of the Bayport Police Department to respond to the scene as a backup. The two police departments are relatively small and Oak Park Heights and Bayport share a border, so the two departments work together on most calls.

The database check revealed that Defendant had at least two prior convictions for driving without a license, which made the current violation an arrestable gross misdemeanor. Therefore, Officer Shelley arrested Defendant for driving without proof of insurance or a valid registration and driver's license, placed him in the squad car, and informed him that his vehicle would be towed.

Officer Shelley called for a tow truck, pursuant to OPHPD's Vehicle Inventory & Impound Policy ("the Policy"), which allows a vehicle to be towed and impounded for safekeeping if the driver of the vehicle has been taken into custody or when law enforcement has probable cause "to believe that the vehicle . . . constitutes or contains evidence of a crime and impoundment is reasonably necessary to obtain or preserve the evidence." (Gov. Ex. 4 subdivs. 4(11), (12); Hr'g Tr. 18–19.) Subdivision 5(1) of the Policy prohibits towing a vehicle whose

registration tabs have been expired for fewer than 90 days, but the department usually tows a vehicle if there is no proof of insurance and tabs have been expired more than 90 days. (Gov. Ex. 4 subdiv. 5(1); Hr'g Tr. 19.) Officer Shelley began completing the impound report form and Officer Jones began an inventory search. (Hr'g Tr. 20.)

Although the roadside search and the items found in the vehicle were fully captured on Officer Jones's body-worn camera, the camera footage was not entered into evidence. (Id. at 43; Doc. 38 at 5 n.4.)

During the search, Officer Jones found a bag under the back seat containing multiple $CO_2$ cartridges with what appeared to be wicks attached. (Hr'g Tr. 20; Gov. Exs. 6–7.) He alerted Officer Shelley, they continued searching, and found a white PVC pipe, approximately eight inches long, that Investigator Wynia testified "appeared to be a pipe bomb" in the trunk. (Hr'g Tr. 21.)

After discussing potential next steps, the officers contacted Sgt. Vierling for advice. (Id. at 21-22.) Sgt. Vierling directed the officers to stop the search, take photos of the items, and have the vehicle towed to the impound lot. (Id. at 22.) The officers did so, leaving the alleged explosive devices in the vehicle.

4

What the officers did not do was note any items they had found in the vehicle in the "Vehicle Inventory" box of the impound report even though this was required by OPHPD inventory Policy.  (Id. at 39; Gov. Ex. 5.)[1]

## II.   DISCUSSION

Defendant proffers four objections to the R&R, all of which the Court will overrule.

### A.  Scope of Defendant's Objection to Search

Defendant argues that the Magistrate Judge erred in suggesting he only contests part of the search.  (Doc. 41 at 3.)  While the Magistrate Judge stated that the scope of Defendant's arguments were "not entirely free from doubt," his analysis covered the constitutionality of the search starting from three different points, including from inception.  (Doc. 38 at 10-12.)  This objection is overruled.

---

[1] The next day, the vehicle was searched pursuant to a valid search warrant that apparently was obtained based on an affidavit containing information developed during the traffic stop.  (Doc. 38 at 6 (citations omitted).)  The validity of this warrant is not part of the motion currently before the Court, but the Court's adoption of the R&R means information obtained during the search at issue could legally be included in the warrant.

5

### B. Assignment of Burden of Proof

Defendant objects that the Magistrate Judge impermissibly assigned him the burden of proof. (Doc. 41 at 1-3.) The Magistrate Judge correctly placed the burden on the Government to prove the need for a warrantless search and concluded the Government met its burden. (Doc. 38 at 7, 15.) Defendant's citations to the record are not persuasive, especially his reliance on a footnote relaying a mere fact. (Id. at 5 n.4.) This objection is overruled.

### C. Inventory Search as a Pretext to Search for Contraband

Defendant's main objection is to the Magistrate Judge's finding that the inventory search was not a pretext to look for contraband. Defendant argues that Officers Shelley's and Jones's failure to record any property on the impound report even though required to do so by OPHPD Policy supports a finding that the inventory search was a pretext to look for contraband. (Doc. 41 at 3-5 (citing United States v. Rowland, 341 F.3d 774, 781 (8th Cir. 2003)).)

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and

6

well-delineated exceptions." United States v. Taylor, 636 F.3d 461, 464 (8th Cir. 2011) (cleaned up). An inventory search is one of the "well-defined exceptions to the warrant requirement." United States v. Morris, 915 F.3d 552, 556 (8th Cir. 2019). Under the exception, law enforcement are permitted to inventory the contents of a vehicle lawfully taken into custody without a warrant or probable cause to search. United States v. Williams, 39 F.4th 1034, 1043 (8th Cir. 2022) (citation omitted). However, an inventory search must still be reasonable under the totality of the circumstances, which means that "law enforcement may not use an inventory search as 'a ruse for general rummaging in order to discover incriminating evidence.'" Id. (quoting United States v. Nevatt, 960 F.3d 1015, 1020 (8th Cir. 2020)) (per curiam). An inventory search conducted according to standardized police procedure satisfies the reasonableness requirement and generally "remove[s] the inference that the police have used inventory searches as a purposeful and general means of discovering evidence of a crime." Taylor, 636 F.3d at 464 (citation omitted).

However, "[e]ven when law enforcement fails to conduct a search according to standardized procedures, this does not mandate the suppression of

7

the evidence discovered as a result of the search." United States v. Rowland, 341 F.3d 774, 780 (8th Cir. 2003). "There must be something else; something to suggest the police raised the inventory-search banner in an after-the-fact attempt to justify a simple investigatory search for incriminating evidence." Id. (quotation omitted).

As the R&R concluded, Officers had the right to tow Defendant's vehicle to the impound lot under the OPHPD Vehicle & Impound Policy. (Gov. Ex. 4, subdivs. 4(11), (12); 5(1).) An inventory search under the Policy satisfies three needs: "Protection of the owner's property while it remains in official custody; . . . Protection of this agency and the public from potential danger and harmful materials; [and] . . . Protection of this Agency against false claims of stolen, lost or damaged property." (Id. at 3.) The Policy requires officers to "specifically list all personal property of estimated value over $20.00" on the inventory form. (Id.)

On the night Defendant was arrested, Officers Shelley and Jones conducted an inventory search per the Policy while they waited for the tow. The Magistrate Judge correctly found that the search was valid from the beginning because it was conducted pursuant to OPHPD Policy. (Doc. 38 at 12.)

8

Defendant's citation to Rowland is unpersuasive. As detailed above and in the R&R, the Rowland court stated that just because a search is not conducted according to standardized procedures, that does not mean suppression of evidence discovered during the search is required. 341 F.3d at 780. There must be "something else." Id. In Rowland, the "something else" in addition to failure to comply with proper completion of the police department inventory form was 1) officers calling for drug-sniffing dogs at the side of the freeway where the vehicle in which the defendant was a passenger was stopped; 2) detaining both the defendant and the vehicle driver while officers investigated them and searched the vehicle even though they were not under arrest; and 3) repeatedly asking the defendant if he had contraband in the vehicle. Id. Officers also testified that the search was partially conducted to investigate the possibility the defendant was trafficking narcotics. Id.

Here, although Officers Jones and Shelley failed to comply with OPHPD Policy by failing to complete the inventory form, that, alone is not enough to require suppression. Unlike the situation in Rowland, there is simply no evidence of "something else" in this case. See, United States v. Holbdy, No. 24-

9

CV-145 (JRT/LIB), 2024 WL 5323843, at *9 (D. Minn. Dec. 9, 2024) (recommending court deny motion to dismiss in case with facts similar to facts of instant case), R&R adopted, 2025 WL 89169 (Jan. 14, 2025); United States v. Morris, 995 F.3d 665, 669-70 (8th Cir. 2021) (holding inventory search reasonable under totality of circumstances when officer failed to fully comply with department towing policy after roadside arrest even though there was no required inventory or tow report, only an auto storage report). The Government has met its burden to show the applicability of the inventory search exception to the warrant requirement, even though the report is incomplete. (Doc. 38 at 14 (noting the inventory was electronically date stamped "11/02/2024 02:05:03," which is evidence the inventory search was not an after-the-fact justification, but rather showed that when the search was initiated, the officers intended to perform the inventory pursuant to OPHPD Policy).)

As the Magistrate Judge concluded, "[p]ublic safety demanded a deviation from the Policy. . . . to call their supervisor for further instruction was the wisest option available at the time. In complying with his directions, they stopped their search because he had told them that was the safest course of action." (Id. at 16.)

Therefore, under the totality of the circumstances, the search was constitutional. This objection is overruled.

### D. Evidence of Ulterior Investigatory Motive

Finally, and intertwined with both objections above, Defendant objects that the Magistrate Judge erred by rejecting Defendant's assertion that "the United States and the officers are providing the inventory search as a post hoc rationale for unlawful general rummaging to look for incriminating evidence . . . when there is no evidence in the record to support that assertion." (Doc. 41 at 4 (quoting R&R at 15 (noting "cleaned up" by Def.).) He objects that the Magistrate Judge erred in assuming the Defendant failed "to carry a burden of proof that he does not bear" when the Magistrate Judge held that Defendant "has failed to provide evidence of any ulterior investigatory motive." (Id. at 2 (quoting R&R at 14).) He asserts the Magistrate Judge erred by failing to acknowledge that all that is needed to prove improper motive is "the abject failure to record any property in the vehicle – which is the only purpose of a legitimate inventory search." (Id. at 5.)

As discussed above, the Magistrate Judge correctly assigned the burden to the Government. In fact, in the paragraph right after Defendant's quoted

11

material, the R&R states, "[T]he United States met its burden of showing the applicability of the inventory search exception and the propriety of the search pursuant to that exception, through the testimony of Investigator Wynia." (Doc. 38 at 15.)

Moreover, the Court holds that the Magistrate Judge's finding there was no evidence supporting a finding of ulterior investigatory motive did <u>not</u> shift the burden of proof to Defendant. This was merely another proper analysis of the facts, which is supported by the R&R's citation to the factual differences between <u>Holbdy</u>, where the Magistrate Judge opined "there were facts . . . that would plausibly support a finding that the police had an investigatory motive (the defendant had led the officers on a high-speed car chase that allegedly involved the defendant pointing a weapon at the officers)" versus "no such evidence here" to support such a finding. (Doc. 38 at 14-15.)

As discussed above and extensively explained in the R&R, there must be something else besides the failure to conduct a search according to standardized procedures, something that the facts demonstrated was absent here, to require suppression of evidence discovered as a result of the search. (<u>Id.</u> at 9, 14-16);

12

Morris, 995 F.3d at 670 (rejecting defendant's "offer[] as proof of pretext" that inventory search was actually investigatory in nature); Holbdy, 2024 WL 5323843, at *7-8 (holding that requisite "something else" was not present and finding defendant's arguments "unpersuasive" because defendant failed to highlight any evidence demonstrating that the officer used the inventory search as an after-the-fact justification for vehicle search).  This objection is overruled.

### III.   CONCLUSION

The Court finds no error in the Magistrate Judge's application of the law to the facts of this case.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1. The Report and Recommendation dated May 22, 2025 **(Doc. 38)** is **ADOPTED**; and

2. Defendant's Motion to Suppress Evidence **(Doc. 27)** is **DENIED**.

DATED:  July 23, 2025                           s/Michael J. Davis
                                                Michael J. Davis
                                                United States District Court

13