UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-317 (MJD/DJF)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | PLEA AGREEMENT AND |
| v. ) | SENTENCING STIPULATIONS |
| ) | |
| WAYNE ROBERT LUND, ) | |
| ) | |
| Defendant. ) | |

The United States of America and the defendant, WAYNE ROBERT LUND, agree to resolve this case on the following terms and conditions. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. The agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges**. The defendant agrees to plead guilty to Count 1 of the Indictment. Count 1 charges the defendant with possession of unregistered firearms, namely eight destructive devices, (as defined in 26 U.S.C. § 5845(a), and (f)), in violation of Title 26, United States Code, Sections 5861(d) and 5871. In exchange, the government agrees to dismiss the remaining Counts of the Indictment, Count 2 through Count 4, at the time of sentencing. The defendant fully understands the nature and elements of the crime to which he is pleading guilty pursuant to this plea agreement.

2. **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count 1 of the Indictment. In pleading guilty, the defendant admits the

following facts and agrees that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

    a.    Shortly after 2:00 am on November 2, 2024, an Oak Park Heights Police Officer conducted a lawful traffic stop of the defendant's vehicle, on westbound Highway 36, within two to three miles of the Wisconsin borderline. The vehicle's registration had expired about 15 months prior, and the vehicle was uninsured. Additionally, the defendant had a revoked driver's license.

    b.    After running vehicle database checks, the Officer arrested the defendant for gross misdemeanor traffic-related charges. Because the vehicle was uninsured, the Officer impounded the vehicle and called for a tow.

    c.    During a lawful inventory search of the vehicle prior to towing, Officers located seven $CO_2$ metal cartridges with taped fuses coming out the top (known as "cricket bombs") inside a military style pouch, under the rear seat, and one 8-inch PVC pipe bomb that was capped at both ends in the vehicle's trunk area. The devices were later rendered safe by the Saint Paul Bomb Squad, and the devices and their contents were sent to the FBI Lab in Quantico, Virginia for analysis and qualification.

    d.    FBI Lab analysis of the devices' contents showed that each of the eight devices contained explosive powder and were determined to be destructive devices within the definition of Title 26. Additionally, the pipe bomb was determined to contain apparent glass shards and had a hole drilled in the top of one of the end-caps with the remnants of a fuse inserted in the hole.

    e.    During a court-authorized search of the defendant's rented hotel room in Stillwater, Minnesota, police located five additional empty $CO_2$ metal cartridges, similar to those found in the vehicle, five shotgun shell primers, a safe containing about 804 rounds of ammunition, several high-capacity magazines, and a three-ring binder on pyro chemicals and terms.

    f.    During a court-authorized search of a freezer chest in Wisconsin used by the defendant for storage, agents recovered another $CO_2$ cricket bomb identical to the seven recovered from the defendant's vehicle, approximately 117 empty $CO_2$ metal cartridges, a 12-inch-long white PVC pipe capped on one end, hobby fuse, precursors to make explosive black powder, and a jug filled with dark powder. Presumptive testing conducted by FBI bomb technicians indicated that both the $CO_2$ cricket bomb and the jug with the dark powder contained explosive material.

  g. A record search check with the National Firearm Registration and Transfer Record (NFRTR) showed that the defendant does not have any destructive devices registered with the NFRTR, as is required by the National Firearms Act under Title 26.

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved by the Court and to file any additional pre-trial motions in this case. The defendant further agrees that, by pleading guilty, he is knowingly and voluntarily withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights**. The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt

and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences**. The defendant understands that as a result of this conviction, the defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the defendant is not a United States citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and nevertheless still wants to plead guilty in accord with the terms of this plea agreement.

6. **Statutory Penalties**. The parties agree that Count 1, charging possession of unregistered firearms, in violation of 26 U.S.C. §§ 5861(d) and 5871, is a felony offense that carries the following statutory penalties:

   a. a maximum term of 10 years' imprisonment, a Class C felony. (18 U.S.C. § 3559(a)(3); 26 U.S.C. § 5871);

   b. a supervised-release term of not more than 3 years. (18 U.S.C. §§ 3559(a)(3) and 3583(b)(2));

   c. a fine of up to $10,000. (18 U.S.C. § 3571(b)(1); 26 U.S.C. § 5871); and

   d. a mandatory special assessment of $100. (18 U.S.C. § 3013(a)(2)(A)).

7. **Guidelines Calculations**. The parties acknowledge the defendant will be sentenced in accordance with Title 18, Chapter 227 (18 U.S.C. §§ 3551 – 3586) and with reference to the advisory United States Sentencing Guidelines. The parties also

acknowledge the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence, and the parties stipulate to the following Guidelines calculations. Notwithstanding the following stipulations, nothing in this plea agreement prevents the parties from bringing to the attention of the Court and the Probation Office all information in their possession regarding the offense(s), including relevant conduct, and the defendant's background.

      a. **Base Offense Level**. The parties agree that because the offense involved a firearm that is described in 26 U.S.C. § 5845(a), and the defendant was a prohibited person at the time the defendant committed the instant offense, the base offense level is 20. USSG § 2K2.1(a)(4)(B).

      b. **Specific Offense Characteristics**. The parties agree that because the offense involved between 8 and 24 firearms, the base offense level is increased by 4 levels. USSG § 2K2.1(b)(1)(B) The parties further agree that because the offense involved a destructive device, the base offense level is further increased by 2 levels. The parties agree that no other specific offense characteristics or adjustments apply.

      c. **Chapter Three Adjustments**. The parties agree that, other than acceptance of responsibility, no other Chapter Three adjustments apply.

      d. **Acceptance of Responsibility**. The United States agrees to recommend that the defendant receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a). As the defendant has timely notified the government of the defendant's intention to enter a plea of guilty, the United States agrees to recommend that the defendant receive an additional one-level reduction pursuant to USSG § 3E1.1(b). Whether these reductions are granted shall be determined by the Court in its discretion. The defendant understands and agrees, however, that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change-of-plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant does not engage in any conduct inconsistent with acceptance of responsibility before the time of sentencing.

Nothing in this plea agreement, however, limits the right of the government, pursuant to USSG § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility.

After applying all adjustments, the **adjusted total offense level is 23 (20+4+2-3)**.

e. **Criminal History Category**. The parties believe that at the time of sentencing the defendant's Criminal History Category is **II**. USSG § 4A1.1. This does not constitute a stipulation, but only a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that, notwithstanding any other provision of this plea agreement, if the presentence investigation reveals any prior adult or juvenile sentence which should be included within their criminal history under the U.S. Sentencing Guidelines, the government will be permitted to advocate for, and the defendant will be sentenced based on, their true and actual criminal history category, and the defendant will not be permitted to withdraw from this Plea Agreement. USSG § 4A1.1.

f. **Guidelines Ranges**. If the adjusted total offense level is 23, and the criminal history category is II, the advisory Guidelines range is 51 to 63 months' imprisonment.

g. **Fine Ranges**. If the adjusted total offense level is 23, the applicable fine range is $20,000 to $200,000. USSG § 5E1.2(c)(3).

h. **Special Assessments**. The Guidelines require payment of a special assessment in the amount of $100.00 for each count, for a total of $100. USSG § 5E1.3. The defendant understands and agrees that this special assessment is due and payable at the time of sentencing.

i. **Supervised Release**. The Guidelines provide for a term of supervised release of at least 1 year but not more than 3 years. USSG § 5D1.2(a)(2).

8. **Discretion of the Court**. The foregoing stipulations bind the parties but not the Court. The parties understand the Sentencing Guidelines are advisory

and their application is a matter falling solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also vary and/or depart from the applicable Guidelines. If the Court determines the applicable Guidelines calculations and/or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9. **Sentencing Recommendation and Departures**. The parties are free to recommend whatever sentence each party deems appropriate. The parties also reserve the right to make motions for departures under the Sentencing Guidelines or for variances pursuant to 18 U.S.C. § 3553(a) and to oppose any such motions made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, however, neither party will have the right to withdraw from the plea agreement, and the defendant will have no right to withdraw his guilty plea.

10. **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* USSG §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a

requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

11. **Forfeitures**. The defendant agrees to forfeit all firearms involved in the offense, including the seven cricket-style $CO_2$ explosive devices and the one capped pipe-bomb explosive device, all accessories seized therewith on or about November 2, 2024, any other firearms, explosives, explosive materials, accessories, (including, but not limited to blasting agents, detonators, fuses, primers, $CO_2$ cartridges, black powder, and other explosive device accessories), 804 rounds of various caliber ammunition, and all other accessories, including magazines, seized therewith on or about November 2, 2024, to the United States pursuant to 26 U.S.C. § 5872 and 28 U.S.C. § 2461(c). The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal, or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The defendant also waives all statutory and constitutional defenses to the forfeiture, consents to the destruction of the firearms, ammunition, magazines, and associated accessories, and agrees that the items are subject to forfeiture because they were involved in knowing violations of federal law.

12. **Waiver of Freedom of Information Act and Privacy Act**. In exchange for the concessions of the United States made herein, the defendant waives all rights to obtain, directly or through others, information about the investigation

and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

13.  **Waiver of Appeal and Postconviction Petition**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes but is not limited to the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the change-of-plea proceedings, the sentence imposed, the Guidelines calculations, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment greater than the high-end of the applicable Guidelines range.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. Further, this collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this plea agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence, except the United States may appeal the substantive reasonableness of a term of imprisonment less than the low-end of the applicable Guidelines range.

14. **Complete Agreement**. This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that he has read the entire agreement and has reviewed every part of it with his counsel; (b) that he fully understands this plea agreement; (c) that he is pleading guilty because he is in fact guilty of committing the crimes to which he is pleading guilty; (d) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (e) that he is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (f) that he has entered into this plea agreement freely, knowingly, and voluntarily; and, (g) that his decision to plead guilty in accord with

the terms and conditions of this plea agreement is not the result of any threats or coercion directed at him or anyone connected with him.

Dated: **SEPTEMBER 10, 2025**  JOSEPH H. THOMPSON
Acting United States Attorney

BY: BENJAMIN BEJAR
Assistant United States Attorney
District of Minnesota

Dated: **Sept 10, 2025**

WAYNE ROBERT LUND
Defendant

Dated: **10 Sept 2025**

DANIEL L. GERDTS, ESQ.
Attorney for Defendant